[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 10, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-10798
Non-Argument Calendar

_____

D.C. Docket No. 03-00295-CV-ORL-22KRS

MONIQUE MILLER,

Plaintiff-Appellant,

versus

LECTRA USA, INC.

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(August 10, 2005)**

Before BIRCH, BARKETT and WILSON, Circuit Judges.

PER CURIAM:

Monique Miller appeals the district court's grant of summary judgment in

favor of her former employer, Lectra USA, Inc. ("Lectra"). Miller alleged "hostile

work environment" sexual harassment and retaliation, pursuant to the Florida Civil Rights Act of 1992 ("FCRA") and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*  On appeal, Miller argues that the district court erred in finding that she did not establish a prima facie case of sexual harassment or retaliation.

A.  <u>"Hostile Work Environment" Sexual Harassment Claim</u>

Miller first argues that the district court erred in finding that she did not establish a prima facie case of sexual harassment because she failed to show that the complained-of conduct was sufficiently severe or pervasive.  Miller contends that she established the pervasive nature of the harassment by presenting evidence of three examples of misconduct on the part of her former supervisor, Jill Simmons, and three examples of misconduct on the part of another Lectra employee, Greg Sumners, each of which occurred during a relatively short period of time.  Miller contends that the unwelcome and offensive nature of the acts, combined with her testimony that she suffered psychological effects therefrom, sufficiently established a hostile work environment.  Miller also argues that the court erred in finding that (1) Miller was not subject to unwelcome sexual harassment and (2) Simmons' conduct was not based on Miller's gender.

We review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party. *Perrino v. Southern Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1314-15 (11th Cir. 2000). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

"Florida's Civil Rights Act is patterned after Title VII, and thus federal case law dealing with Title VII is applicable to employment discrimination claims brought under Florida law." *Maniccia v. Brown*, 171 F.3d 1364, 1368 n.2 (11th Cir. 1999). We analyze Miller's discrimination claims, which are based on both Florida and federal law, solely by reference to cases interpreting Title VII. *Id.*

Title VII prohibits "hostile work environment" sexual harassment. *See Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1279 (11th Cir. 2003). To establish a prima facie case of "hostile work environment" sexual harassment, a plaintiff must show the following: (1) she belongs to a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based upon her sex; (4) the harassment complained of was sufficiently severe or pervasive to alter the terms or conditions of employment and to create a

3

discriminatorily abusive working environment; and (5) the defendant is responsible for such environment under either a theory of vicarious or direct liability.  *See id.* at 1279-80.

Here, Miller did not present evidence that the conduct of Simmons and Sumners was sufficiently severe or persuasive to alter the terms or conditions of her employment and to create a discriminatorily abusive working environment. Miller alleges that Simmons: (1) at a hotel bar and in front of Miller and other co-workers, loosened the tie of a married, male co-worker and rubbed her hands all over his chest and head, (2) took Miller with her to purchase condoms and told Miller that the condoms were for her "love-fest weekend with [her] new boyfriend," and (3) talked about her sex life with male and female co-workers. Miller further alleges that Sumners: (1) made comments to her about her being a good-looking female and her marriage not being that serious as she had been only recently married, (2) told her that she looked good in short skirts, and (3) asked her out for drinks and dinner on a number of occasions.  This conduct is not sufficiently severe or persuasive to alter the terms or conditions of Miller's employment, when compared with the conduct complained of in *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1247-48 (11th Cir. 1999) (*en banc*).  (Holding that a supervisor's acts of rubbing his hip against plaintiff's hip while touching her

4

shoulder and smiling, looking at plaintiff's groin area while making a sniffing sound, and "constantly" staring and following plaintiff were insufficient as a matter of law to sustain a "hostile work environment" sexual harassment claim).

We are bound by our precedent in *Mendoza*. *Id*. at 1247-48. Because Miller did not present evidence that the complained-of conduct was sufficiently severe or persuasive to alter the terms or conditions of her employment, Miller failed to show a prima facie case of hostile work environment sexual harassment. *See Walton*, 347 F.3d at 1279. Thus we need not address Miller's arguments that the district court erred in finding that Miller was not subject to unwelcome sexual harassment and that Simmons' conduct was not based on Miller's gender.

B.    Retaliation Claim

Miller next argues that the district court erred in finding that she failed to show a prima facie case of retaliation because Miller failed to show a causal connection between her complaints of harassment and her termination. Miller concedes that she filed her initial complaint regarding harassment in February 2001 and was terminated in September 2001. However, Miller contends that she showed the requisite temporal proximity between the events, in that Simmons was not aware that Miller had filed the complaint against her until August 2001, one month prior to Miller's termination. Miller also argues that she showed that she

5

had a reasonable good faith belief that discrimination existed and that Lectra's articulated reason for terminating her employment was pretextual.

Again, we review a district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party. *Perrino*, 209 F.3d at 1314-15. We analyze Miller's discrimination claims solely by reference to cases interpreting Title VII. *Maniccia*, 171 F.3d at 1368 n.2.

Title VII prohibits an employer from discriminating against an employee in retaliation for exercising a right guaranteed thereunder. *See* 42 U.S.C. § 2000e-3(a). "A prima facie case of retaliation contains three elements: first, the plaintiff engaged in statutorily protected conduct; second, the plaintiff suffered an adverse employment action; and finally, the adverse action was causally related to the protected expression." *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1291 (11th Cir. 2002) (internal quotations omitted). "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511 (2001) (internal quotations omitted).

Here, Miller has not shown sufficient temporal proximity between her complaints to her employer and her termination as to establish causation. *See id.* The evidence shows that Miller filed a written complaint of harassment with Lectra in February 2001 and was terminated in September 2001. This seven-month period between the two events is not "very close" as to establish the necessary temporal proximity. *See Clark County*, 532 U.S. at 273, 121 S. Ct. at 1511 (relying on cases that held a three-month period and a four-month period insufficient in holding a 20-month period insufficient to suggest causality). The seven-month period between Miller's complaint of harassment and her termination falls outside the parameters for establishing causation.[1] Miller, however, argues that the relevant period of time is not the seven-month period between her complaint to Lectra and her termination, but the one-month period between when Simmons (a decision-maker in her termination) learned of Miller's complaint, and Miller's subsequent termination.

Even assuming that Miller can establish a prima facie case based on the approximately one-month period between when Simmons became aware of the

---

[1] We do not suggest that a seven-month period between an employer's knowledge of a protected activity and an adverse employment action is always insufficient evidence of causality. However, given the facts of this case, the temporal proximity of seven months is not enough to establish causation. *See Clark County*, 532 U.S. at 273, 121 S. Ct. at 1511.

7

complaint and when Miller was terminated, she has failed to provide evidence that Lectra's stated legitimate reason for the termination – poor sales performance – was pretextual. In support of her pretext argument, Miller alleges that Lectra's record of employee performance, the "GAP report," shows that male employees with similar sales records were not terminated, and that Simmons falsified Miller's sales forecast.

Having examined the record, we find that the GAP report in actuality demonstrates that Miller's sales performance lagged substantially behind that of her colleagues of similar employment history who were not terminated. Further, Miller has provided no evidence that Simmons "falsified" Miller's sales forecast. Although evidence indicates that Simmons adjusted the raw sales forecast figures submitted by Miller, the record also establishes that those adjustments were a proper exercise of Simmons' managerial duty to ensure that the sales forecast reflected realistic sales prospects. Miller provides no evidence that Simmons' adjustments were improper. Because Miller has failed to create a genuine issue of fact regarding whether Lectra's stated legitimate reasons for dismissing her were pretextual, the district court's grant of summary judgment was appropriate. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001).

Upon review of the record and upon consideration of the parties' briefs, we discern no reversible error.  Accordingly, we affirm the district court's grant of summary judgment.

**AFFIRMED.**