**Brenda PENN, Plaintiff,**

v.

**DEPARTMENT OF CORRECTIONS, et al., Defendants.**

**No. CIV.A.2:04CV733T(WO).**

United States District Court, M.D. Alabama, Northern Division.

Dec. 15, 2005.

---

8. *See, e.g., Beaird v. Seagate Tech., Inc.,* 145 F.3d 1159, 1164 (10th Cir.1998).

9. DUCivR 83–1.4(3)(i).

Amardo Wesley Pitters, A. Wesley Pitters, P.C., Montgomery, AL, for Plaintiff.

Andrew Weldon Redd, Alabama Department of Corrections Legal Division, Montgomery, AL, for Defendants.

## OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff Brenda Penn, a woman over the age of 40, filed this lawsuit claiming that the Alabama Department of Corrections (ADOC) and several of its officers denied her requests to work overtime, because of her gender and age and in retaliation for filing an administrative charge of discrimination, all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17; the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C.A. §§ 621–634; and the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C.A. § 1983. Penn names the following as defendants: ADOC, Prison Wardens Terrence McDonnell and Leeposey Daniels, and Correctional Officers Phillis Billups, John Crow,

Franklin Brown, and Michelle Ellington. Jurisdiction over all claims is proper under 42 U.S.C.A. §§ 1331 (federal question) and 1343 (civil rights); jurisdiction over the ADEA claim is proper under 29 U.S.C.A. § 626, and jurisdiction over the Title VII claim is proper under 42 U.S.C.A. § 2000e–5(f)(3).

This case is currently before the court on the defendants' motion for summary judgment. The motion will be granted.

## I. SUMMARY–JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## II. BACKGROUND

The following facts are construed in Penn's favor as the non-moving party:

Penn has worked as an ADOC correctional officer since 1976. During the times relevant to this lawsuit, she was assigned to first shift at the Kilby Correctional Facility; during 2003 and 2004, she volunteered to work overtime on third shift at Kilby, and in 2004 volunteered to work overtime at the Montgomery Community Work Center.[1]

### A. Kilby Correctional Facility

On April 25, 2003, Correctional Officer Billups (who was in charge of third shift) was notified by a memorandum from Correctional Officer Crow (Penn's immediate supervisor) that Penn had been late or completely failed to show up for overtime work on Kilby's third shift on at least four occasions.[2] On April 30, Penn, Crow, and Billups met and discussed her tardiness-attendance problems. During this meeting, Penn was advised that further incidents could result in her not being allowed to work overtime. On May 1, Crow advised Billups that Penn had been late again, and Penn had another meeting to discuss her tardiness.[3]

On May 7, 2003, Crow again advised Billups that Penn had arrived to her post late. Although Penn had arrived to Kilby on-time, she did not report to her post until 2:02 a.m. (two minutes after the shift start-time). She had been told the previous day that she would work at Central Control, but when she arrived there at 1:58 a.m., she was notified for the first time that she had to work at Tower 5. Penn arrived to her post tardy that day because Crow changed her assignment without notice and delayed her in a corri-

---

1. Defendants' brief in support of summary judgment (Doc. No. 28), Deposition of Brenda Penn, pp. 12–13, 19–20, 82–83.

2. *Id.*, Affidavit of Phyllis Billups, p. 2 & attachments (April 25, 2003 Memorandum from John Crow); Affidavit of Terrance McDonnell, p. 1. Under ADOC rules, employees are tardy unless they are at their assigned post when

the shift begins. Plaintiff's brief in opposition to Defendants' motion for summary judgment (Doc. No. 33), Deposition of Brenda Penn, p. 37.

3. Defendants' brief in support of summary judgment (Doc. No. 28), Affidavit of Phyllis Billups, p. 2.

dor while holding his finger near her face and yelling at her for being late.[4]

The next day, Penn was advised that, because of her continued tardiness, she could not work overtime on third shift at Kilby until further notice. At Penn's request, Kilby Warden McDonnell met with Billups, Crow, Penn, and a Lieutenant Bolling to discuss the denial of overtime. McDonnell advised Penn that her removal from overtime on third shift was not permanent and she could still work overtime on first and second shifts. Penn indicated that she did not wish to work on third shift again and would get sufficient overtime on first and second shift.

On October 6, 2003, McDonnell told Billups to allow Penn to work overtime on third shift again, but to let Penn know that further tardiness would result in disciplinary action.[5] On October 14, Penn filed a charge with the Equal Employment Opportunity Commission (EEOC) claiming that she had been discriminated against because of her gender and age when ADOC refused to allow her to work overtime at Kilby.[6]

During the time in question, Correctional Officers Moore and Anderson, who are both males under the age of 40, were caught sleeping on the job, yet they were not denied the opportunity to work overtime; instead, they were suspended without pay from working their regular shifts.

Officer Rowe, who is male and under 40, was in a car accident that occurred while he was driving in heavy fog while working overtime, yet he was not denied the opportunity to work overtime. or suspended.[7] Correctional Officer Hartman, Walters, Armstrong, Barnes, and Jarrett, all of whom are male and under 40, arrived to overtime late, or failed to show up, on only one occasion, but none was disciplined. Officer Stafford, who is a 39-year old female, was tardy to overtime on first shift once and failed to report for scheduled overtime on second shift once; she was not suspended from overtime on either shift.[8] Finally, Jerome Turner, a male employee under the age of 40, failed to report for overtime on second shift on several occasions, received a written warning that future incidents would result in his suspension from overtime, and then failed to report for scheduled overtime; he was then suspended from overtime on second shift at Kilby.[9]

### B. Montgomery Community Work Center

Penn began working overtime at the Montgomery Community Work Center in April 2004. Penn was suspended from working overtime at the center for a month, beginning mid-June 2004, because her supervisors believed that she had been tardy to scheduled overtime shifts. Correctional Officers Ellington and Brown

---

4. Plaintiff's brief in opposition to defendants' motion for summary judgment (Doc. No. 33), Deposition of Brenda Penn, pp. 31–40. ADOC does not have a policy that requires advance notice to employees of their assignment. *Id.*, pp. 33–36.

5. Defendants' brief in support of summary judgment (Doc. No. 28), Affidavit of Phyllis Billups, p. 3.

6. *Id.*, Ex. 1, EEOC charge.

7. Penn maintains that Rowe fell asleep at the wheel. *Id.*, Deposition of Brenda Penn, p. 118–20. Her testimony, however, consists of

inadmissible hearsay, *see* Fed.R.Evid. 802, so the court cannot consider it on summary judgment, *see* Fed.R.Civ.P. 56(e).

8. Plaintiff's brief in opposition to defendants' motion for summary judgment (Doc. No. 33), Deposition of Brenda Penn, pp. 110–121.

9. Defendants' brief in support of summary judgment (Doc. No. 28), Affidavit of Phyllis Billups, p. 4 & attachments (May 23, 2003 Memo to Jerome Turner and May 30, 2003 Memo to Jerome Turner).

told Work Center Warden Daniels that Penn had been late to work. Penn does not directly dispute that she was late, but rather contends that Ellington and Brown confused her with another employee named Kramer Penn, who had been tardy.[10]

When Penn learned she was denied overtime, she complained about the mistake through the chain of command, and her complaint was ultimately reviewed by ADOC Commissioner Campbell.[11] She was reinstated to overtime at the Work Center on July 7, 2004, pursuant to a memorandum from Commissioner Campbell.[12] The memo stated that "effective immediately" employees could be denied the opportunity to work overtime only if ADOC Deputy Commissioner approved of that action.[13]

The EEOC issued Penn a right-to-sue letter on May 5, 2004.[14] Penn filed this lawsuit on July 30, 2004.

## III. DISCUSSION

Penn alleges that the defendants prevented her from working overtime at Kilby because of her age and gender. She also claims that she was denied overtime in retaliation for her allegations of discrimination. Under Title VII, it is illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ...," 42 U.S.C.A. § 2000e–2(a)(1); similarly, the Fourteenth Amendment, as enforced through § 1983, prohibits gender discrimination in employment. The ADEA prohib-

its an employer from failing or refusing to hire any individual or otherwise discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's age; the protected class under the ADEA includes individuals over the age of 40. 29 U.S.C.A. § 621(a)(1). Employers are also prohibited from retaliating against employees who have made a charge of discrimination. 42 U.S.C.A. § 2000e–3(a) (Title VII); 29 U.S.C.A. § 623(d) (ADEA).

This case is governed by the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* approach, an employee has the initial burden of establishing a prima-facie case of unlawful employment discrimination or retaliation by a preponderance of the evidence. *Id.* at 802, 93 S.Ct. 1817; *Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir.1988). If the employee establishes a prima-facie case, the burden then shifts to the employer to rebut the presumption by articulating legitimate, non-discriminatory and non-retaliatory reasons for its employment action. *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir.2000). The employer has the burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced. *See, e.g., Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253–55, 258, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817.

Once the employer satisfies this burden of production, "the presumption of discrim-

---

10. *Id.*, Deposition of Brenda Penn, pp. 82–89.

11. *Id.*, pp. 89–91.

12. Plaintiff's brief in opposition to defendants' motion for summary judgment (Doc. No. 33), Ex. H, July 7, 2004 Memo to Brenda Penn.

13. *Id.*, Ex. F, Minutes from July 8, 2004 Staff Meeting.

14. *Id.*, Ex. B, EEOC Dismissal and Notice of Rights.

ination [or retaliation] is eliminated and 'the [employee] has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Chapman*, 229 F.3d at 1024 (citations omitted). The employee may meet this burden by persuading the court that a discriminatory or retaliatory reason more than likely motivated the employer or by demonstrating that the proffered reason for the employment decision is not worthy of belief. *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089; *see also Young*, 840 F.2d at 828.

## A. Disparate Treatment

There are multiple ways to establish a prima-facie case of gender or age discrimination. *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1268 (11th Cir.1999); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir.1984).[15] As a general principle, "demonstrating a prima facie case is not onerous." *Holifield v. Reno*,

115 F.3d 1555, 1562 (11th Cir.1997). Because Penn asserts much of the same evidence in the prima-facie and pretext stages of the burden shifting framework, this court will assume, without deciding, that she has presented a prima-facie case of gender and age discrimination and proceed directly to the second and third prongs of the *McDonnell Douglas* test.

ADOC has articulated a legitimate, non-discriminatory reason for suspending Penn from overtime.[16] Specifically, ADOC maintains that it suspended Penn from overtime because she was repeatedly tardy or failed to show up for overtime duty and persisted in her misconduct after being 'counseled' by her supervisors that future misconduct would result in her removal from overtime on third shift at Kilby.

Penn argues that this explanation is pretextual for two reasons. First she maintains that other employees outside her protected classes engaged in similar misconduct, yet were not suspended from overtime. Second, she maintains that Officer Crow caused her to be late on May 7, 2003.[17]

---

**15.** For example, an employee may state a prima-facie case of disparate treatment by showing (1) she belongs to a protected group, (2) she experienced an adverse employment action, (3) her employer filled her position with someone outside the protected class, and (4) she was qualified for her job. *Bogle v. Orange County Bd. of County Comm'rs*, 162 F.3d 653, 656–57 (11th Cir.1998). A plaintiff can also state a prima-facie case by showing (1) she belongs to a protected group, (2) she experienced an adverse employment action, (3) her employer treated similarly situated employees outside her protected group more favorably, and (4) she was qualified for the job. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997)

**16.** Penn also relates an episode in February 2003 when she was required to work in the control tower with the lights off. This requirement is in accordance with the Standard Operating Procedures of ADOC. Apparently, her supervisor even found her a flashlight

when she stated that she did not have one. Defendants' brief in support of summary judgment (Doc. No. 28), Deposition of Brenda Penn, pp. 53–59. To the extent this incident is relevant at all, it certainly does not support her gender or age-discrimination claims. Penn offers no evidence she was treated differently from other employees, offers no explanation why it would constitute an adverse-employment action, and offers no evidence that the episode was in any way related to her gender or age.

**17.** Penn also contends that the decision to suspend her from overtime violated ADOC policies and procedures, so it must be pretextual. No evidence supports this contention. The record evidence merely reflects that the Commissioner of ADOC, in response to her complaint about being suspended from the Work Center, determined that "effective immediately" no employee could be denied approval without approval from the Commissioner's office.

## 1. Comparator Evidence

Penn maintains that ADOC's explanation is not worthy of belief because she was the only person suspended from overtime, even though other employees who were male or under the age of 40 also engaged in misconduct. In order to make a valid comparison of the plaintiff's treatment to that of non-protected employees, the plaintiff must show that she and those employees are similarly situated in all relevant respects. *Holifield*, 115 F.3d at 1562. "[T]he quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). Thus, for both the gender discrimination and age-discrimination claims, Penn must identify comparators outside the relevant protected classification whose conduct was nearly identical to hers and were not disciplined.

### i. Gender

■ Penn contends that Officers Moore and Anderson, who are both male, were caught sleeping on the job, yet they were not denied the opportunity to work overtime. The misconduct of Officers Moore and Anderson is not identical to being repeatedly late for work or failing to show up for work, so they are not valid comparators. But more importantly, they, like Penn, were punished for their misconduct, by being suspended from work without pay, which is arguably a more severe punishment than simply being denied the opportunity to work overtime. This under-

mines any inference of that they were treated more favorably because of their gender or age.

Penn notes that Officer Rowe caused a car accident but was not suspended or denied overtime. First, being in a car accident is not sufficiently identical to failing repeatedly to arrive for work on time. Second, the car accident occurred in heavy fog, and there is no admissible evidence in the record to suggest that the accident was caused by any wrong-doing on Rowe's part. Because Rowe's alleged misconduct differs so profoundly from Penn's, no reasonable fact-finder could find that the failure to discipline Rowe suggests that ADOC's proffered reason for disciplining Penn is pretextual.

■ Penn also contends that certain male employees showed up late for overtime work or failed to show up at all, yet they were *not denied the opportunity to work overtime.* Officers Hartman, Walters, Armstrong, Barnes, and Jarrett, all of whom are male, arrived to overtime late, or failed to show up, on only one occasion, and no evidence in the record suggests that they persisted in their misconduct after a counseling session. Therefore, their misconduct was not of the same quantity or quality as Penn's. Because their conduct was not nearly identical, they are not valid comparators.

### ii. Age

Officers Hartman, Walters, Armstrong, Barnes, Jarrett, Rowe, Moore, and Anderson are also under the age of 40.

Even if her contention were supported by the record, it does not help her cause. Her supervisors were just as likely to violate ADOC procedures to prevent an unreliable person from working on their shift as they were to do so because she was a woman or over 40 years old. Simply put, the fact that her supervisors may have violated ADOC pro-

cedures sheds no light on the reasons behind their decision.

Finally, ADOC suspended Jerome Turner, a male under the age of 40, from overtime for nearly identical conduct. This undermines any inference that ADOC violated its policies because of Penn's gender or age.

However, as described above, they are not valid comparators for Penn's age-discrimination claim because their misconduct was not sufficiently identical to that of Penn.

For the purposes of this claim, however, Penn identifies an additional comparator, Officer Stafford, who is a 39–year old female. Stafford was tardy to overtime on first shift once and failed to report for scheduled overtime on second shift once. Whereas Penn was repeatedly late for overtime on the same shift, Stafford was late only once to each shift. Even if the court ignored this distinction, Penn was late or failed to report for overtime at least six times, while Stafford was late or failed to report twice. Thus, Penn's misconduct was greater in quantity than Stafford's. Moreover, there is no evidence that Stafford was warned, yet persisted in her misconduct, whereas Penn persisted in her tardiness even after a warning. Therefore, Penn's misconduct was also more severe in its quality than Stafford's. Accordingly, Stafford is not a valid comparator.

Finally, ADOC suspended Jerome Turner, a male under the age of 40, from overtime. Tuner was late or failed to show up, was warned, and then persisted in his misconduct before he was suspended. Thus, his conduct was nearly identical to Penn's, but he was disciplined in the same manner as Penn. The fact that ADOC applied the same disciplinary procedure to another employee who had engaged in nearly identical misconduct undermines any inference that its decision to suspend Penn from overtime at Kilby was discriminatory.

### 2. Correctional Officer Crow's Conduct

■ Penn does not dispute that she was tardy or failed to report for scheduled overtime shifts on several occasions prior to April 25, 2003, that she was warned on April 30 that future tardiness would result in the denial of overtime on third shift at Kilby, and that she was tardy on May 1. However, she contends that she arrived to her post late on May 7 solely because Crow changed her assignment without notice and stopped her in the lobby.

Although Penn fails to articulate why this is relevant, the court will do its best to complete her argument. The memo that informed Penn that she had been suspended from overtime on third shift stated that she had been 'counseled' on April 30 and was late again on May 7. Thus, although she was also late on May 1, the stated reason for the suspension was her tardiness on May 7. Presumably, Penn means to suggest that ADOC's explanation is pretextual because her tardiness on May 7, the stated basis for her suspension, was caused by a supervisor.

However, an "employer may [take adverse action against] an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984). While it certainly seems unfair to penalize someone for misconduct caused by a supervisor, Penn has advanced no evidence to suggest Crow's conduct was motivated by a discriminatory reason. The court is not suggesting that Crow did not harbor some personal ill-will against Penn.[18] However, even assuming that Crow changed the schedule and delayed Penn in order to make Penn late, Penn has presented no evidence that Crow took such actions because of her gender or age. Simply put, Penn has presented no evidence that Crow's decision to change her assignment, which did not violate ADOC

---

**18.** Crow raised his voice when he confronted Penn on May 7, 2003, stuck his finger in her face, and accused Penn of thinking she was above the rules.

policies, was motivated by a discriminatory animus.[19] *See Damon v. Fleming Supermarkets of Florida Inc.*, 196 F.3d 1354, 1361 (11th Cir.1999) ("We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision."). This court is not a super-personnel department that referees, or second-guesses, an employer's handling of personal disputes between employees. *See Wilson v. B/E Aero., Inc.*, 376 F.3d 1079, 1092 (11th Cir.2004). The court's concern is ferreting out employment actions taken for discriminatory reasons. Thus, Crow's actions on May 7 do not help Penn prove that ADOC's decision to suspend her from overtime based on tardiness is pretextual.

No evidence in the record would allow a reasonable fact-finder to conclude that the defendants' proffered legitimate reason for denying Penn overtime is pretextual. Therefore, the defendants are entitled to summary judgment on Penn's disparate-treatment claims.

### B. Retaliation

To establish a prima-facie case of retaliation, Penn must show (1) a statutorily protected expression; (2) an adverse-employment action; and (3) a causal link between the protected expression and the adverse action. *Raney v. Vinson Guard Service Inc.*, 120 F.3d 1192, 1196 (11th Cir.1997). ADOC concedes for the purposes of summary judgment that Penn engaged in protected expression and that the denial of overtime was an adverse-employment action.

In order for an employee to prove a causal link, the employer must, at a minimum, be aware of the protected expression when it takes the adverse action. *Raney*, 120 F.3d at 1197. Because Penn was denied overtime at Kilby before she filed her EEOC charge or this lawsuit, that adverse action cannot support a claim for retaliation. *See Griffin v. GTE Fla., Inc.*, 182 F.3d 1279, 1282 (11th Cir.1999) (noting that "the adverse employment action must follow the statutorily protected conduct" to state a prima-facie case of retaliation). Therefore, Penn can state a claim for retaliation only if she proves a causal link between her EEOC charge and her denial of overtime at the Work Center.

An "employee may prove the causal connection by showing a close time-link between the adverse-employment action and the protected activity." *Johnson v. Auburn University*, 403 F.Supp.2d 1101 (M.D.Ala.2005) (Thompson, J.). "The shorter the period between the two events, the stronger the inference that the adverse action was improperly motivated; conversely, a long period of time between the protected conduct and adverse-employment action will negate an inference that the adverse action was caused by the protected expression." *Id.*

"The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). The

19. Penn claims that Crow has a history of harassing women. In fact, his ex-wife filed two complaints alleging domestic violence. These charges were either dismissed or resulted in verdicts of acquittal. Plaintiff's brief in opposition to defendants' motion for summary judgment (Doc. No. 33), Deposition of John Crow, pp. 59–65; Ex. K. This alleged conduct occurred at home, not in the employment context, and allegedly involved a significant other, not a co-worker. Plus, none of these allegations can be substantiated. Thus, they are not sufficiently probative of Crow's relationship with women in the workplace to imply a discriminatory animus against Penn.

Supreme Court has cited with approval decisions in which a three– to four-month gap between the protected conduct and adverse action was insufficient to establish a causal connection. *Id.* (citing *Richmond v. ONEOK, Inc.,* 120 F.3d 205, 209 (10th Cir.1997) (three-month period insufficient), and *Hughes v. Derwinski,* 967 F.2d 1168, 1174–75 (7th Cir.1992) (four-month period insufficient)). In *Higdon v. Jackson,* 393 F.3d 1211 (11th Cir.2004), the Eleventh Circuit held that, by itself, a three-month period between complaints of discrimination and an alleged assault by a supervisor was too great to allow a reasonable inference of causal relation. *Id.* at 1221. *See also Miller v. Lectra, USA, Inc.,* 145 Fed. Appx. 315, 318 (11th Cir.2005) (unpublished) (holding that, by itself, a seven-month gap between complaint of discrimination and termination was insufficient to prove causal connection).[20]

■ Here, Penn has presented no admissible evidence of a causal relation beyond the timing of her one-month suspension relative to her filing of the EEOC charge. The court concludes that she cannot state a prima-facie case of retaliation because the filing of her EEOC charge is too far removed temporally (seven months) from the denial of overtime at the Work Center to support an inference of causal connection without any other evidence of retaliatory intent. *See Clark County,* 532 U.S. at 273, 121 S.Ct. 1508. This is particularly true here because Penn was allowed to continue working overtime on third shift at Kilby after she filed her EEOC charge (without any retaliation) and was initially afforded the opportunity to work overtime at the Work Center after she had filed her EEOC charge. Essentially, ADOC allowed Penn to work overtime at Kilby and even gave her additional opportunities to work overtime at the Work Center during the seven months between the EEOC charge and the Work Center incident. This contradicts any inference that the Work Center adverse action was retaliatory.[21]

20. The court notes that in *Gupta v. Fla. Bd. of Regents,* 212 F.3d 571, 590 (11th Cir.2000), the court held that an approximately seven-month gap between a complaint of sexual harassment (protected expression) and a denial of an extension of tenure and denial of a merit raise (adverse actions) might, by itself, be sufficient to establish causation. To the extent *Gupta* is still good law in light of *Clark County,* the denial of the extension of tenure and the denial of the merit raise were actually the first opportunity the employer had to retaliate against the employee following her protected conduct. In contrast, the employers in the *Clark County* and *Higdon* cases and in Penn's case (as well as every other case cited here) had ample opportunity to engage in the same type of alleged retaliation during the period between the protected expression and the alleged retaliation. Therefore, any inference of causal connection is undermined because the employer could have, but chose not to, retaliate during the lengthy interval.

21. Although she does not address it in her brief, she filed a grievance with ADOC because she had difficulties scheduling overtime at the Work Center in September 2004. Apparently, she requested certain overtime shifts, but the shift supervisor did not add her to the schedule. Defendants' brief in support of summary judgment (Doc. No. 28), Deposition of Brenda Penn, pp. 92–94; Ex. 3, Grievance, ¶ 4.

It is not clear that this constitutes an adverse-employment action, particularly because Penn declined several opportunities to work overtime and did not return a phone call from the shift supervisor. Defendants' brief in support of summary judgment (Doc. No. 28), Ex. 3, Grievance, Statement of Demetrius Holstick. Even if it did constitute an adverse-employment action, Penn cannot prove a causal link between this and her EEOC charge because it is even more temporally removed than the one-month suspension.

The court notes that she might be able to prove a causal link between the unavailability of overtime and her appeal of the denial of overtime at Work Center. However, that internal grievance is not protected expression

■ Even assuming Penn could prove a prima-facie case, she cannot overcome ADOC's legitimate, non-discriminatory reason for suspending her from overtime at the Work Center. ADOC maintains that it suspended her because she reported to scheduled overtime at the Work Center late. In fact, Penn's own testimony supports ADOC's proffered non-discriminatory reason for denying her overtime. She testified that she was suspended from overtime at the Work Center because her supervisors thought she was Kramer Penn, who had been tardy and was unreliable. Thus, by her own admission, the most that she can prove is that she was denied overtime because of a mistaken identity. Just as "an employer who treats two employees differently because of a mistaken belief in the existence of a neutral reason" has not engaged in discrimination, *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1261 (11th Cir.2001), an employment action taken because of a mistaken understanding of facts will not support a claim for retaliation. Simply put, no evidence supports her contention that the denial was in retaliation for her EEOC charge, and her conclusory assertions of retaliation are not enough. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1083 (11th Cir.1990).

Because Penn has not proven a prima-facie case of retaliation or advanced any evidence that would allow a reasonable fact-finder to conclude that the defendants' proffered non-discriminatory reason for not reclassifying her was pretextual, the defendants are entitled to summary judgment on Penn's retaliation claims.[22]

## IV. CONCLUSION

For the foregoing reasons, the court concludes that summary judgment is due to be granted on all of Penn's claims against all defendants.

An appropriate judgment will be entered.

---

under Title VII or the ADEA because she did not claim her one-month suspension was based on age or gender or was retaliatory. By her own admission, she claimed the suspension was caused by mistaken identity.

22. In her deposition, Penn states that another corrections officer told her that Warden Daniels, who ran the Work Center, said in a staff meeting that he did not want Penn working at the Work Center because she had "filed papers" against Billups. Plaintiff's brief in opposition to defendants' motion for summary judgment (Doc. No. 33), Deposition of Brenda Penn, p. 105. Although this would be evidence, even direct evidence, of retaliation, Penn's testimony is inadmissible hearsay, *see* Fed.R.Evid. 802. Thus, the court will not consider it on summary judgment. *See* Fed. R.Civ.P. 56(e).

Also, Penn alleges that a sergeant on duty at the Work Center cursed her out and yelled at her during a phone call. Defendants' brief in support of summary judgment (Doc. No. 28), Ex. 3, Grievance, ¶ 4. Nothing in the record suggests that this sergeant was involved in either decision to suspend Penn from overtime. Moreover, this alleged exchange occurred several months after Penn had been reinstated to overtime at the Work Center and at least a year after she had been reinstated to overtime on Kilby's third shift. Finally, Penn does not dispute that the sergeant merely said, "damn you," when complaining that Penn was trying to tell him how to set up the schedule for his shift. He never mentioned her age, gender, or her EEOC charge in conversations with her. This exchange is irrelevant.