[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 3, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-15897
Non-Argument Calendar

_____

D. C. Docket No. 03-00983-CV-JTC-1

ANTHONY MILLER,

Plaintiff-Appellant,

versus

JOHN E. POTTER,
Postmaster General, United States
Postal Service,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 3, 2006)

Before ANDERSON, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Anthony Miller, an African-American, appeals the district court's grant of summary judgment to John E. Potter, the postmaster general of the United States Postal Service ("USPS") as to (1) his due process complaint that the USPS was obligated to inform him that he had the right to appeal his termination to either the Equal Employment Opportunity office ("EEO") or the Merit System Protection Board ("MSPB"), and (2) his Title VII complaints of racial discrimination and retaliation.

We review a district court's grant of summary judgment de novo, viewing the evidence in favor of the non-moving party. Fisher v. State Mut. Ins. Co., 290 F.3d 1256, 1259-60 (11th Cir. 2002). We may affirm the district court's decision for reasons that differ from those stated by the district court. Chappell v. Chao, 388 F.3d 1373, 1376-77 (11th Cir. 2004). We must ensure that the district court has resolved "all reasonable doubts about the facts in favor of the non-movant, and draw[n] all justifiable inferences in his [or her] favor." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

I.

Miller first argues that the USPS gave him insufficient notice of his appeal rights. Miller's letter of removal, which he received on August 15, 1997, informed

2

him of his right to appeal to the MSPB, but did not inform him of his right to appeal to the EEO. Miller argues that he properly raised the issue of race discrimination in front of USPS agents and, therefore, USPS was obligated to inform him of his right to appeal to the EEO.

Miller argues that the processing of an action does not end until after the filing deadline for an appeal with the MSPB and, therefore, the USPS was required to give him notice of his election rights after he visited the EEO counselor on August 19, 1997. Miller additionally contends that the processing of his termination commenced on June 23, 1997, and, after he received the notice of proposed removal, he stated discrimination and retaliation as bases for the adverse employment action in front of Loretta Gomez, his supervisor, and Keith Harmon, the post office's customer service manager, at the unemployment hearing. Miller further argues that Gomez issued the notice of proposed removal, and was the decisionmaker in his case. Miller asserts that, as the regulation does not limit the employee to a particular forum or individual, his statements triggered the notice requirements of 29 C.F.R. § 1614.302(b). Finally, Miller argues that he also showed he detrimentally relied upon the defective notice because he appealed his removal to the MSPB, and did not make an informed election, and additionally no agency has heard the merits of his claim.

3

The MSPB has jurisdiction over appeals from specific types of federal agency actions, including suspensions, reductions in grade or pay, and terminations. 5 C.F.R. § 1201.3.

Section 1614.302 of 29 C.F.R. states, in pertinent part:

(a) Definitions--

> (1) Mixed case complaint. A mixed case complaint is a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age or handicap related to or stemming from an action that can be appealed to the Merit Systems Protection Board (MSPB). The complaint may contain only an allegation of employment discrimination or it may contain additional allegations that the MSPB has jurisdiction to address.

> (2) Mixed case appeals. A mixed case appeal is an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, handicap or age.

(b) Election. An aggrieved person may initially file a mixed case complaint with an agency pursuant to this part or an appeal on the same matter with the MSPB pursuant to 5 CFR 1201.151, but not both. An agency shall inform every employee who is the subject of an action that is appealable to the MSPB and who has either orally or in writing raised the issue of discrimination during the processing of the action of the right to file either a mixed case complaint with the agency or to file a mixed case appeal with the MSPB. The person shall be advised that he or she may not initially file both a mixed case complaint and an appeal on the same matter and that whichever is filed first shall be considered an election to proceed in that forum.

29 C.F.R. §§ 1614.302(a) & (b). Agency, in this section, refers to the particular agency's EEO office. See Butler v. West, 164 F.3d 634, 638 (D.C. Cir. 1999). Therefore, where an individual has a mixed case complaint that may be appealed to the MSPB, he has the option of either pursuing that appeal or else filing a complaint with the EEO. 29 C.F.R. § 1614.302(b). If he appeals to the MSPB, and the MSPB makes an adverse ruling, he may then file a petition with the EEOC for review of that ruling. 5 U.S.C. § 7702(b). If the EEOC concurs in the final decision of the Board, that decision becomes judicially reviewable in federal district court. 5 U.S.C. § 7702(b)(5)(A).

In order to show that the notice of election of appeal violated his due process rights, Miller must show that (1) the notice was defective, and (2) he detrimentally relied upon that notice. Loudermilk v. Barnhart, 290 F.3d 1265, 1268-69 (11th Cir. 2002). We have expressly rejected the idea that an appellants may per se suffer detrimental reliance because they received defective notice, because the Supreme Court's decision in Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992), requires that appellants must show a causal connection to a specific harm. Loudermilk, 290 F.3d at 1269.

We need not decide whether the notice was defective, because we find that Miller has offered no evidence of prejudice. Even if the notice did not properly

5

inform Miller of his option to pursue his claim with the EEO, Miller has not shown that he was harmed by this omission. Miller's assertion that he did not make an informed decision would require us to find that he was <u>per se</u> harmed by the notice. That argument is foreclosed by our prior case law. <u>Loudermilk</u>, 290 F.3d at 1269. Miller's next assertion is that no agency has heard the merits of his claim. The lack of any agency review, however, stems from the fact that he withdrew his appeal before the MSPB in order to pursue union grievance procedures. Miller was aware that he could pursue either an MSPB appeal, or the union grievance procedure, but not both. Miller does not show how the USPS notice is responsible for the withdrawal of his appeal, and thus does not provide a causal connection to the notice. <u>See id.</u> Moreover, if Miller had pursued his MSPB claim and received an adverse determination, he could have petitioned the EEOC for review of his claim. Even if the notice was defective, Miller's harm was caused by his decision to pursue the union grievance procedure, rather than the MSPB appeal, with its option of EEOC review. Accordingly, Miller suffered no prejudice from the notice.

## II.

Miller also brings claims of employment discrimination and retaliation for filing EEO claims. Miller argues that the district court impermissibly weighed the

6

evidence in deciding that he had not established a prima facie case of discrimination or retaliation. With regard to his racial discrimination claim, Miller contends that the district court accepted as true the allegations that Miller threatened other employees, even though he asserted that he made no threats. According to Miller, because there is a question as to whether or not he threatened anybody, summary judgement was inappropriate.  With regards to his retaliation claim, Miller argues that he raised an issue of material fact regarding causation because Gomez placed him on off-duty status, and was therefore the decisionmaker in his termination, and he had made an EEO claim against her the previous year.

Title VII states, in relevant part, that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin . . ."  42 U.S.C. § 2000e-2(a).  We apply the analytical framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d. 668 (1973), and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), when a Title VII plaintiff uses circumstantial evidence to prove his case.  Durley v. APAC, Inc., 236 F.3d 651, 655 (11th Cir. 2000).  Under the McDonnell Douglas framework, when circumstantial evidence is used, a plaintiff must first establish a

7

prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824.  The burden then shifts to the employer to state a legitimate, nondiscriminatory reason for the employment decision.  Id. at 802-03, S.Ct. at 1824-25.  If the employer successfully does so, the burden shifts back to the plaintiff to show that the reason offered by the employer was pretextual.  Id. at 804, S.Ct. at 1825.

"A plaintiff may show pretext and survive summary judgment by presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, non-discriminatory reasons."  Schoenfeld v. Babbitt, 168 F.3d 1257, 1269 (11th Cir. 1999) (internal quotations omitted).  Our sole concern is whether unlawful discriminatory animus motivated the challenged employment decision, not whether the employment decisions were prudent or fair.  Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999).  In sum, it does not matter whether the plaintiff is actually innocent of the infraction for which she was fired; the only relevant inquiry is whether the employer believes she is guilty.  Id. at 1363 n.3 ("[a]n employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct.").

Miller may establish a prima facie case of employment discrimination by

showing that: (1) he is a member of a protected class; (2) he was subjected to adverse employment action; (3) his employer treated similarly situated employees outside of his protected class more favorably; and (4) he was qualified to do the job.  Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999).  "In determining whether the employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."  Id.  "The most important factors in the disciplinary context are the nature of the offense committed and the nature of the punishments imposed."  Id.

Miller did not establish a prima facie case of disparate treatment because he failed to present sufficient evidence to create a genuine issue of material fact as to whether he and other postal employees were similarly situated.  The evidence established that the quality of other postal employees' misconduct is distinguishable from that of Miller's alleged misconduct.

First, Miller asserts that he is similarly situated to Augustine Lemos, the employee with whom he had the initial altercation in which they exchanged racially derogatory comments. Lemos was suspended for fourteen days for his participation in the incident, but was not terminated.  Milller, however, was terminated for repeatedly threatening Lemos and other employees after the

9

incident. There is no evidence in the record that anyone reported to Flynn, the person who decided to terminate Miller, that Lemos threatened to kill or harm anyone. According to the reports of Loretta Gomez and other employees, Miller repeatedly threatened to kill Lemos and made threatening comments about other employees. There is no indication that Lemos made similar threats, or that any such threats were reported to USPS decision-makers. While Miller denied threatening to hurt anyone in his affidavit, he did not contest the threats to Flynn, when Flynn was making the decision to terminate him. Thus, the evidence shows that Flynn was aware of threats by Miller, and only Miller, at the time she made her decision to terminate him. Miller is not similarly situated to Lemos because the decision-maker, Flynn, had reports of threats made by Miller after the incident with Lemos.

Second, Miller further asserted that other postal workers have assaulted, threatened, grabbed, and pulled a gun on other carriers, without being disciplined. Miller, however, does not allege that the USPS was aware of these incidents or that these altercations escalated to the point where death threats were (1) made by any of the white employees, or (2) reported to the USPS management as such. Miller provides no details about the incidents, or whether they were reported to the USPS decision-makers. Miller offers no evidence about these claims other than the bare

10

allegations of his affidavit. Accordingly, Miller has not offered sufficient evidence that he is similarly situated to any of these other employees. Miller, therefore, failed to establish a prima facie case of disparate treatment based on race.

Similarly, Miller failed to establish a prima facie case of retaliation. To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two events. Brochu v. City of Riviera Beach, 304 F.3d 1144, 1155 (11th Cir. 2002).

To establish a causal connection, a plaintiff must show that the protected activity and the adverse action "are not completely unrelated." Hidgon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004). In the absence of other evidence of causation, temporal proximity between the protected activity and the adverse action must be close in order to show a causal connection. Id. Consequently, a complaint fails as a matter of law when there is a substantial delay between protected activity and the adverse action, and when there is no other evidence to show causation. Id. The Supreme Court has stated that, when attempting to prove an adverse employment action through temporal proximity to protected speech, the elapsed time must be very short. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001). We have likewise held

11

that a three month interval between the protected speech and an adverse action is too great, without more, to establish an inference of retaliation. Higdon, 393 F.3d at 1221.

Miller failed to present sufficient evidence to raise a genuine issue of material fact that there was a causal link between his participation in EEO activities and his termination. Miller's only evidence of a causal link is that he was engaged in EEO activities in 1996. Speech made in 1996 is too remote in time to create an issue of fact concerning causation where the next applicable event is in May, 1997. See Hidgon, 393 F.3d at 1221. As a result, Miller has not established a prima facie case of retaliation.

The district court's grant of summary judgment is

**AFFIRMED.**