[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
04/09/99
THOMAS  K. KAHN
CLERK

————————————

No. 97-3011

————————————

D. C. Docket No. 3:96-cv-214/LAC

SANDRA J. MANICCIA,

Plaintiff-Appellant,

versus

JERRY D. BROWN,
Sheriff of Santa Rosa County, Florida,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Northern District of Florida

————————————

**(April 9, 1999)**

Before EDMONDSON and BLACK, Circuit Judges, and RESTANI[*], Judge.

BLACK, Circuit Judge:

---

[*] Honorable Jane A. Restani, Judge, U. S. Court of International Trade, sitting by designation.

Appellant Sandra J. Maniccia appeals the district court's order granting summary judgment for Appellee Sheriff Jerry D. Brown in her suit alleging disparate treatment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and the Florida Civil Rights Act of 1992, Fla. Stat. chs. 760.01 to 760.11. The district court determined that: (1) Appellant could not establish a prima facie case of disparate treatment because she failed to adduce sufficient evidence from which a reasonable jury could find that Appellee treated similarly situated male employees more favorably; and (2) Appellant could not establish a prima facie case of retaliation because she failed to adduce sufficient evidence from which a reasonable jury could find that she suffered adverse employment action or that her protected activity motivated Appellee's actions. We affirm.

## I. BACKGROUND

Appellant was employed as a deputy sheriff for Santa Rosa County in Florida. In August 1991, she filed a sexual harassment complaint against Sergeant Edward Johnson, her supervisor on road patrol, and Corporal James Spencer, her coworker. About the same time that she filed the complaint, she was taken off road patrol and was thus no longer under Sergeant Johnson's supervision. In November 1992, Appellant was transferred again, this time to work in the jail as a corrections officer.

Although her pay was not affected, Appellant regarded the transfer to the jail as a demotion.

Appellee took office as Sheriff of Santa Rosa County in December 1992. In early 1993, Appellant complained to Appellee about her work assignment. In March 1993, Appellee reassigned Appellant to road patrol where she was again under Sergeant Johnson's supervision. After Appellant worked three shifts on road patrol, Sergeant Johnson filed charges against her for failure to follow operating procedures and policies. An internal investigation followed, and Appellee fired Appellant on April 2, 1993.

With the assistance of counsel, Appellant challenged her termination at a hearing before the Santa Rosa County Civil Service Board (CSB). The CSB determined that Appellant committed the following policy violations: (1) Appellant obtained confidential driver's license information via the Florida Crime Information Computer (FCIC) for an acquaintance who then used the information for the private benefit of a corporation; (2) Appellant lied when she advised a dispatcher that she was seeking the FCIC driver's license information; (3) Appellant transported an unauthorized passenger without advising the dispatcher or requesting authorization from a superior; and (4) Appellant lied when she denied transporting an unauthorized passenger. Indeed, the CSB determined, and the district court agreed, that Appellant's

3

untruthfulness about her misconduct continued during the internal affairs investigation and when she testified under oath during the administrative challenge before the CSB. As a result of these findings, the CSB concluded Appellant committed the charged offenses and Appellee had just cause to terminate her. Despite Appellant's attempts to raise the issue, the CSB did not consider or rule upon Appellant's contention that she was disciplined more severely than male employees.

The circuit court of Santa Rosa County, Florida, denied Appellant's petition for writ of certiorari. Appellant filed this action in state court, contending she was disciplined more severely than similarly situated male employees and she was terminated in retaliation for filing a sexual harassment complaint. Appellee removed the case to federal court. Following discovery, the district court granted Appellee's motion for summary judgment. The court determined at the outset that the findings in the administrative and state court proceedings estopped Appellant from arguing she did not violate policies or lie.

With respect to Appellant's allegation of disparate treatment, the district court determined Appellant could not establish a prima facie case because none of her proffered comparators was similarly situated to her. Specifically, the district court concluded that "several magnitudes of difference" existed between Appellant's misconduct and the cases of male employee misconduct documented in the record.

With respect to Appellant's allegation of retaliation, the district court determined Appellee was aware of the sexual harassment complaint Appellant filed against Sergeant Johnson in 1991, even though Appellee was not yet in office. Nevertheless, the court found Appellant could not establish a prima facie case because the temporal gap between the alleged instances of retaliation—her reassignment to the jail in November 1992 and her termination in April 1993—and the August 1991 sexual harassment complaint precluded a finding that retaliation motivated Appellee's employment actions.[1]

## II. DISCUSSION

We review a district court's grant of summary judgment de novo applying the same standards as the district court. *Harris v. H & W Contracting Co.*, 102 F.3d 516, 518 (11th Cir. 1996). The Court must "view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F. 3d 1278, 1285 (11th

---

[1] In addition, after reviewing Appellant's complaint, the district court concluded she did not attempt to state a claim for hostile work environment sexual harassment and that such a claim did not exist in this case. On appeal, Appellant challenges that finding, contending her initial administrative complaint and EEOC charge were based entirely on sexual harassment. Whether she alleged sexual harassment in prior proceedings does not affect the contents of her complaint. Our review of the record confirms the district court's finding that her complaint did not contain a sexual harassment claim. *See Case v. State Farm Mut. Auto. Ins. Co.*, 294 F.2d 676, 678 (5th Cir. 1961) (noting the liberal construction accorded a pleading (now codified by Rule 8(f) of the Federal Rules of Civil Procedure) does not require courts to fabricate a claim that a plaintiff has not spelled out in his pleadings).

5

Cir. 1997) (citation omitted). Summary judgment is proper if the pleadings, depositions, and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

A.    Collateral Estoppel

Appellant asserts the district court erred by finding she was collaterally estopped from arguing she did not commit the violations that led to her termination. In particular, she contends that she did not violate the policy against untruthfulness.

The CSB determined Appellant did, in fact, engage in the misconduct of which she was accused. Indeed, a review of the CSB's factual findings reveals that Appellant admitted at the hearing that she committed each of the violations, except those dealing with untruthfulness. Following the CSB hearing, Appellant sought review in the Florida circuit court. In her petition for review, she again admitted violating department rules and regulations, but argued she should have been allowed to present evidence other employees committed the same violations and were not punished. The circuit court ruled that Appellant failed to show that the CSB hearing was procedurally defective or that the CSB's findings were not supported by competent evidence and therefore denied Appellant's petition.

A state court's decision upholding an administrative body's findings has preclusive effect in a subsequent federal court proceeding if: (1) the courts of that state would be bound by the decision; and (2) the state proceedings that produced the decision comported with the requirements of due process. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 482, 102 S. Ct. 1883, 1898 (1982); *see also Sharpley v. Davis*, 786 F.2d 1109, 1111-12 (11th Cir. 1986) (citing *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 104 S. Ct. 892 (1984)). Florida courts recognize the preclusive effect of state court decisions upholding administrative determinations. *See, e.g., School Bd. of Seminole County v. Unemployment Appeals Comm'n*, 522 So. 2d 556, 556-57 (Fla. Dist. Ct. App. 1988). In addition, the record indicates that Appellant had counsel at both the administrative hearing and on petition for certiorari to the Florida circuit court. The CSB allowed her to testify, call witnesses, and cross-examine the witnesses called against her. The fact that the CSB did not allow Appellant to present evidence on issues other than whether she committed the charged violations does not render the CSB's findings procedurally defective.

On these bases, we agree with the district court's determination that Appellant is estopped from arguing she did not lie, disseminate confidential information, or misuse her patrol car. As the district court correctly found, however, this conclusion does not preclude Appellant from alleging and proving her termination was the

product of sex discrimination or retaliation. *See Carlisle v. Phenix City Bd. of Educ.*, 849 F.2d 1376, 1380 (11th Cir. 1988) (holding that even though plaintiff was estopped from arguing that no legitimate reasons existed for adverse employment action, nothing precluded him from arguing that racially discriminatory reason existed as well).

B.    Disparate Treatment[2]

To establish a prima facie case of disparate treatment, Appellant must show: (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated male employees more favorably; and (4) she was qualified to do the job. *See, e.g.*, *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804, 93 S. Ct. 1817, 1824 (1973). The parties do not dispute that Appellant is a woman, she was fired, and she was qualified for her job. They do disagree, however, as to whether Appellant was treated less favorably than similarly situated male employees.

---

[2] The district court analyzed Appellant's discrimination claims, which are based on both state and federal law, solely by reference to cases interpreting Title VII. Florida's Civil Rights Act is patterned after Title VII, and thus federal case law dealing with Title VII is applicable to employment discrimination claims brought under Florida law. *See Florida Dep't of Community Affairs v. Bryant*, 586 So. 2d 1205, 1209 (Fla. Dist. Ct. App. 1991).

"In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir.), *opinion modified by* 151 F.3d 1321 (1998) (quoting *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). "The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed." *Id.* (internal quotations and citations omitted). We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges. *See Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989) ("Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.").

Appellant identifies several individuals whom she believes engaged in misconduct similar to hers, but received less severe punishments. In particular, she points to three male officers—Deputies Bodree, Odell, and Lane—who allegedly carried unauthorized passengers in their cruisers; four male officers—Deputies Fortner, Blow, Cook, and Johnson—who lied; and one male officer—Deputy

Riley—who was convicted of criminal charges based on conduct while he was off duty.

Keeping in mind that "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules," *Jones*, 137 F.3d at 1311 (quoting *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984)), we believe the misconduct engaged in by these male comparators is easily distinguished from that engaged in by Appellant on the basis of both the quantity and the quality of the misconduct. Each of these male officers was involved in a single incident of misconduct or alleged misconduct, whereas Appellant committed at least four policy violations. *See id.* at 1313 (recognizing that "Plaintiff's multiple instances of misconduct on the same day may simply have been 'the straw that broke the camel's back'"). Deputies Bodree, Odell, and Lane each may have carried unauthorized passengers on one occasion, but there is no evidence they lied about it as Appellant did. Deputies Fortner, Blow, Cook, and Johnson may have lied once, but there is no evidence any of them lied repeatedly under oath as Appellant did. Moreover, Deputy Riley may have been convicted of crimes, but there is no evidence he ever engaged in any misconduct while on duty as Appellant did. His convictions were based on off-duty misconduct, with which most employers understandably are not as concerned.

Furthermore, Appellant has not offered any evidence that a male officer has ever used confidential information accessible only to police officers for non-police purposes. Appellee entrusted Appellant with confidential information, and she exploited the information for the private benefit of a corporation. Confidentiality goes to the very heart of law enforcement, as well as any employment relationship. It is quite reasonable for Appellee to respond to such a breach of trust with the most serious punishment available. In sum, Appellant has failed to meet her burden of pointing to a male employee who engaged in the same or similar misconduct.

C.    Retaliation

Appellant claims Appellee retaliated against her by reassigning her to work at the jail in November 1992 and by terminating her in April 1993. To establish a prima facie case of retaliation, Appellant must show: (1) she engaged in protected activity; (2) her employer was aware of that activity; (3) she suffered adverse employment action; and (4) there was a causal link between her protected activity and the adverse employment action. *Little v. United Technologies*, 103 F.3d 956, 959 (11th Cir. 1997).

Assuming, as the district court did, that the transfer to the jail was an adverse employment action,[3] Appellant's transfer and termination occurred 15 and 21 months, respectively, after Appellant filed her grievance against her supervisor. Far from demonstrating a pattern of retaliatory activity, these two employment actions were isolated events that had no temporal relationship to Appellant's protected activity. The more than 15-month period that elapsed between Appellant's grievance and the alleged adverse employment actions belies her assertion that the former caused the latter. *See, e.g., O'Connor v. Chicago Transit Auth.*, 985 F.2d 1362, 1370 (7th Cir. 1993) (9-month gap between protected activity and adverse employment action precluded reasonable inference of causation); *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (13-month delay between protected activity and termination too long for causation to be established); *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (4-month lag between protected activity and termination not sufficient to justify an inference of causation); *cf. Donnellon v. Fruehauf Corp.*, 794

---

[3] Although the issue was not raised in the district court's order or Appellee's motion for summary judgment, we note the record does not support a finding that Appellant's transfer to the jail was an adverse employment action. Appellant admitted that she lost no pay or benefits as a result of that transfer and that previously in her career she had requested placement at the jail. Appellant also testified that, had she been informed of a need for additional staff at the jail, she would have volunteered to work there. At the hearing before the CSB, Appellant testified she did not think working in the jail was "less of a job" than working on patrol. Thus, beyond Appellant's assertion that she considered the transfer to be a demotion, no evidence in the record suggest that the transfer was an adverse employment action.

F.2d 598, 601 (11th Cir. 1986) (averring that fact plaintiff was discharged only one month after filing complaint with EEOC "belies any assertion by the defendant that the plaintiff failed to prove causation").

The only causal connection established by the evidence is between Appellant's misconduct and her termination. Beyond showing that she filed a grievance and was transferred and terminated well over a year later, Appellant has presented no evidence suggesting her sexual harassment complaint motivated Appellee's actions.

### III. CONCLUSION

We hold Appellant failed to present evidence from which a reasonable jury could find a prima facie case of disparate treatment or retaliation. Thus, the district court properly granted summary judgment in favor of Appellee.

AFFIRMED.