[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14977
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 26, 2012
JOHN LEY
CLERK

D.C. Docket No. 1:10-cv-23932-UU


TAMMY VALDES,

                                                          Plaintiff-Appellant,

versus

MIAMI-DADE COLLEGE,

                                                          Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 26, 2012)

Before TJOFLAT, PRYOR and FAY, Circuit Judges.

PER CURIAM:

I.

In 1996, Miami-Dade College (MDC) employed Tammy Valdes as a part-time instructor in its School of Justice ("SOJ"). In August 2006, the first of several student complaints about Valdes's classroom performance, especially during exams, began to surface. Students said that she disturbed them during their exams by talking loudly with profanity over her cell phone. SOJ's internal investigator, Lieutenant Donald Diecidue, investigated the complaint, speaking to several students, and reported to SOJ's Director of Training, Thomas Hood, that the students' complaints were valid. Hood met with Valdes and informed her that such behavior would not be tolerated.

On March 28, 2007, Shawnee Fross, who had been overseeing the performance of 32 part-time instructors at MDC, including Valdes, informed Hood and Dr. Donna Jennings, SOJ's Director, of 10 incidents between September 13, 2006, and March 16, 2007, in which Valdes's performance was lacking. Some of the incidents involved missing a class, or canceling a class without notice, or being late to class. On one occasion she failed to appear and proctor an examination. One of the incidents involved complaints from instructors that she had left a testing area to talk on her cell phone. Fross counseled Valdes after receiving those complaints. On May 21, responding to Jennings's request for additional information on these 10 incidents, Fross wrote Jennings and Hood a

2

memo identifying the specific class of students affected in each of the incidents.

On May 28, 2007, Valdes filed a written grievance with the MDC Human Resources Division, alleging that she was "being treated differently than other instructors in [her] same position." Such treatment, she said, had been going on for nearly two years. Her grievance was investigated, and on July 5, 2007, SOJ issued Valdes a written reprimand. The reprimand consisted of a synopsis of the 10 incidents Fross had reported on March 28 and May 21. Following the issuance of the reprimand, Fross continued monitoring Valdes's performance.

On October 8, 2007, Fross recorded that Valdes called to complain about the number of hours she was working. On October 9, she recorded that Valdes disrupted another instructor's class with her "bitching." On October 10, Barbara Goodman, an instructor, informed Fross that a female African-American student had complained that a female Hispanic instructor had referred to the students as "idiots." At the time of this incident, Valdes was the only female Hispanic instructor on the job. Fross noted that a month before the incident Goodman described, Fagan, another instructor, advised her to stop using Valdes as an instructor because her negative tone and unprofessional language was detrimental to student morale.

On June 1, 2009, a student informed Lieutenant Diecidue that Valdes had

acted unprofessionally during a final exam. Diecidue told Fross, who requested that he meet with the class. During the meeting, several students stated that Valdes disrupted the exam by talking on her cell phone. When the meeting ended, Diecidue directed the students to submit a written statement. Fourteen students signed a statement written by their class leader, which stated, among other things, that Valdes had used SOJ's ammunition and a student's magazines while taking target practice at the Miami Police Department's Medley Firearms Range. When the Diecidue informed Hood of this allegation, Hood asked him to delve into the matter further.

On June 11, 2009, Valdes complained to SOJ's Director, then Ronald Grimmings, that she had received no response from the May 28, 2007 grievance she had filed with MDC's Human Resources Division. That same day, June 11, Hood sent Valdes a letter suspending her without pay pending the outcome of Diecidue's investigation.

In August, Diecidue gave Hood a final report of his investigation. The report confirmed the validity of the complaints the students had made. On October 6, 2009, Valdes filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that her June 11 suspension without pay constituted an act of gender discrimination. She claimed that "male

instructors have been the subject of similar and more serious investigations; yet, the male employees were not suspended while they were being investigated." On October 21, 2009, Grimmings sent Valdes a letter terminating her employment.

On April 14, 2010, Valdes filed a second EEOC complaint, alleging that her termination was discriminatory and in retaliation for her having filed the EEOC complaint on October 6, 2009. In August 2010, EEOC issued a right to sue letter for the October 6 complaint. On October 29, 2010, Valdes brought this lawsuit.

II.

Valdes's complaint, as amended, contained eight counts: Counts 1 and 5 alleged that her suspension on June 11, 2009, and termination on October 21, 2009, constituted gender discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* Counts 3 and 7 alleged that the gender discrimination described in Counts 1 and 5 violated the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01, *et seq.* Counts 2 and 6 alleged that the June 11 suspension and October 21 termination constituted retaliation under Title VII for engaging in protected activity, i.e., filing the grievance on May 28, 2007, and the EEOC complaint on October 6, 2009. Counts 4 and 8 alleged that the conduct described in Counts 2 and 6 violated FCRA.

MDC answered Valdes's complaint and denied liability. And, following

discovery, it moved the court for summary judgment.[1]

The district court addressed the merits of Valdes's Title VII and FCRA claims using the standards required to make out a claim under Title VII.  *See Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) ("decisions construing Title VII guide the analysis of claims under [FCRA]").  The court first addressed the gender discrimination claims, then the retaliation claims.

Title VII prohibits an employer from discharging an employee, or otherwise discriminating against her with respect to her employment, on the basis of gender. 42 U.S.C. § 2000e-2(a)(1).  To establish a *prima facie* case of disparate treatment, a female plaintiff must show that her employer treated similarly situated male employees differently.  *See Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999).  This gender-based disparate treatment is what Valdes alleged in her EEOC complaints and in the district court.

In determining whether the comparator employees Valdes named in her complaint were similarly situated, the district court properly considered whether they were involved in, or accused of, the same or similar conduct and disciplined differently.  *Id.*  The quality and quantity of the plaintiff's and the comparators'

---

[1]   Valdes asked the district court to postpone consideration of the motion so she could engage in further discovery, but the court denied her request.  Valdes challenges the ruling in this appeal.  The challenge is meritless, as the district court acted well within its discretion.

misconduct must be "nearly identical" in order to prevent courts from second-guessing reasonable employer decisions by comparing apples with oranges. *Id.* Misconduct merely similar to that for which the plaintiff was disciplined is not sufficient. *Rioux v. City of Atlanta*, 520 F.3d 1269, 1280 (11th Cir. 2008).

As the district court noted, Valdes's complaint "name[d] ten male employees who were investigated for misconduct; yet, unlike Valdes, never suspended without pay during their investigations." Order, October 5, 2011 ("Order") at 12. But, other than the bare allegations of her complaint, "Valdes provide[d] no additional information on seven of the alleged 'comparators.'" *Id.* "Valdes made no showing at all." *Id*. at 13. "As for the remaining three conparators (Mitchell, Delgado, and Bruzinski), Valdes present[d] evidence of allegations that no reasonable fact-finder could consider to be "nearly identical" in "quality and quantity" to satisfy the legal standard set in *Maniccia, supra*, at 1368." *Id.* Because Valdes failed to present evidence of similarly situated comparators, the district court granted MDC summary judgment on herTitle VII and FCRA gender discrimination claims.

Having disposed of these claims, the district court turned to Valdes's retaliation claims. Title VII prohibits retaliation against an employee for opposing any practice made unlawful by Title VII ("Opposition Clause") or for filing a charge with the EEOC pursuant to Title VII ("Participation Clause"). To establish

7

a prima facie case, a plaintiff must show: (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some casual relationship between the protected activity and the adverse action. *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008). A plaintiff can show that she engaged in a protected activity if she proves that she had a subjective good faith belief, as well as an objective, reasonable belief that her employer engaged in an unlawful employment practice when she opposed that practice. *See Dixon v. The Hallmark Cos.*, 627 F.3d 849, 947 (11th Cir. 2010). An allegation of unfair treatment, absent discrimination based on gender, does not state an unlawful employment practice under Title VII. *Coutu v. Martin Cnty. Bd. of Comm'rs, 47 F.3d 1068, 1074 (11th Cir. 1995).* Furthermore, to establish a causal connection, the plaintiff must show that the employer making the adverse employment action was aware of the protected conduct. *McCann*, 526 F.3d at 1376.

Valdes claims that the grievance she filed with MDC's Human Resources Division on May 28, 2007 constituted a protected activity and that her suspension without pay on June 11, 2009, constituted an act in retaliation for her having filed the grievance. The district court rejected her Title VII and FCRA retaliation claims on two grounds. First, since the "grievance [was] essentially a list of workplace complaints unrelated to Title VII, there [was] no need to determine whether [MDC]

8

unlawfully retaliated against Valdes." Order at 24. But even if viewed as protected activity, Valdes failed to show a causal link between the grievance and the suspension. "Considering the numerous allegations against Valdes in Diecidue's investigation, no reasonable fact-finder could find that [MDC] [did] not satisf[y] its 'exceedingly light' burden of proffering a legitimate reason for suspending Valdes" *id*. at 26, "namely the students' allegations." *Id*. at 28.

Valdes claims that her termination on October 21, 2009 was in retaliation for her having filed a complaint with the EEOC on October 6, 15 days earlier. As the district court properly held, the filing constituted protected activity. Though Valdes swore to the complaint's allegations before a notary public on October 6, the EEOC did not receive it until October 20, and MDC was not aware of the filing on October 21. In addition, the court noted that Bettie Thompson, Vice Provost for Human Resources at MDC, made the decision to fire Valdes because, as far back as 2006, "Valdes had been counseled for being disrespectful to students." *Id*. at 31. And, [s]ince Valdes . . . offered no evidence to show that Thompson's reasons were pretextual, even if [the court] assumed that Thompson was aware of the EEOC complaint, . . . no question of material fact exist[ed] on the question of whether [MDC] unlawfully retaliated against Valdes by firing her." *Id*. The court therefore rejected Valdes's Title VII and FCRA retaliation claims as well.

Valdes appeals the district court's judgment on all counts. She argues that the district court erred in rejecting her gender discrimination claims for failure to present evidence of similarly situated comparators; that the court erred in concluding that she failed to make out a prima facie case on her claims of retaliation; and that the court relied on inadmissible hearsay when it considered Lieutenant Diecidue's report, which contained information related to him by students and instructors. We find no merit in Valdes's challenges to Diecidue's report, which was filed in August of 2009. The report had a bearing on Thompson's October 21, 2009 decision to fire Valdes; Hood's June 11, 2009 decision came before Diecidue filed the report. The report, and the information it related, was not received for the truth of the contents; rather, it was received for the purpose of showing, in part, what prompted Thompson's decision.

As for the district court's rejection of Valdes's claims of gender discrimination and retaliation, we find no merit in Valdes's arguments. The district court viewed the evidence before it in the light most favorable to Valdes, as it was required to do on summary judgment, and it correctly applied the relevant law to the facts that evidence yielded. The court therefore did not err in concluding that Valdes failed to establish a case on any of her counts. The judgment of the district

court is, accordingly,

AFFIRMED.