[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-16043
Non-Argument Calendar
_____

D.C. Docket No. 0:10-cv-61348-RSR

ANDREW A. OSTROW,
a.k.a. Andrew Ostrow,

Plaintiff-Appellant,

versus

GLOBECAST AMERICA INCORPORATED,
A Delaware corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 17, 2012)

Before HULL, MARCUS and MARTIN, Circuit Judges.

PER CURIAM:

Andrew Ostrow appeals the magistrate judge's order granting summary judgment to GlobeCast America, Inc. ("GlobeCast"), his former employer, in his age discrimination suit filed under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1).[1]  After review, we affirm.[2]

## I.  BACKGROUND FACTS

### A.    Ostrow's Employment at GlobeCast

Beginning in 2003, Ostrow worked for GlobeCast as Vice President of Business and Legal Affairs and General Counsel.  Ostrow handled litigation, supervised outside counsel, offered legal advice and risk management, prepared corporate documents and sometimes performed other transactional work, such as negotiating and drafting contracts.  Ostrow also supervised one other in-house

---

[1]The parties consented to proceeding before a magistrate judge pursuant to 28 U.S.C. § 636(c).

[2]We review the grant of summary judgment de novo, "applying the same legal standards as the district court."  Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). "[S]ummary judgment is appropriate if the evidence before the court shows that there is no genuine issue as to any material fact."  Id. (quotation marks omitted); see also Fed. R. Civ. P. 56(a).  In making this determination, we view the evidence, and all inferences reasonably drawn therefrom, in the light most favorable to the nonmoving party.  Maniccia v. Brown, 171 F.3d 1364, 1367 (11th Cir. 1999).

2

attorney, who primarily prepared customer contracts. By December 2008, however, that in-house attorney position was vacant.

On June 8, 2009, GlobeCast hired 37-year-old Carlo Carroccia to be the new in-house attorney without consulting Ostrow. Carroccia had experience as a contracts attorney with telecommunications companies, and his duties at GlobeCast were to include preparing contracts and assisting the sales department in New York. Carroccia's offer letter indicated, however, that there was a possibility of promotion to the general counsel position depending on his performance.

In November 2009, GlobeCast's new CEO, David Justin, informed Ostrow, then 60 years old, that his employment contract would not be renewed when it expired on December 31, 2009. In January 2010, Carroccia was promoted into Ostrow's former job.

## B.    Magistrate Judge's Summary Judgment Ruling

For purposes of summary judgment, GlobeCast conceded that Ostrow established a prima facie case of age discrimination. Applying the McDonnell Douglas framework,[3] the magistrate judge found that GlobeCast had put forth two legitimate, non-discriminatory reasons for CEO Justin's decision not renew

---

[3]McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).

Ostrow's employment contract: (1) Justin wanted to restructure the legal department to save costs due to GlobeCast's poor financial condition; and (2) Justin believed that Ostrow's performance had been deficient.  The magistrate judge concluded that Ostrow presented evidence of pretext as to Ostrow's performance, but not as to GlobeCast's decision to restructure the legal department for financial reasons.  See Chapman v. AI Transport, 229 F.3d 1012, 1037 (11th Cir. 2000) (en banc) (explaining that the plaintiff must present evidence that each of the employer's legitimate, nondiscriminatory reasons is pretextual to avoid summary judgment).  Thus, the district court granted GlobeCast's motion for summary judgment as to the ADEA claim.[4]

## II.  DISCUSSION

### A.    ADEA Principles

"The ADEA makes it 'unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age.'"  Chapman, 229 F.3d at 1024 (quoting 29 U.S.C. § 623(a)(1)); see also 29 U.S.C. § 631(a) ("The prohibitions in this chapter shall be limited to

---

[4]Ostrow's complaint also alleged a breach of contract claim.  The district court granted in part GlobeCast's motion for summary judgment as to that contract claim.  The parties then settled what remained of the contract claim, and the district court entered final judgment.  Ostrow's contract claim is not at issue in this appeal.

individuals who are at least 40 years of age."). Where, as here, the plaintiff relies on circumstantial evidence of age discrimination, this Court has applied the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). See Chapman, 229 F.3d at 1024 (applying framework to ADEA claim). Under this framework, if the plaintiff presents a prima facie case and the employer offers legitimate, non-discriminatory reasons for the adverse employment action, the burden shifts back to the plaintiff to show that the stated reasons were mere pretext for unlawful discrimination. Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010).

The Supreme Court recently clarified that a plaintiff must prove that age was the "but-for" cause for the adverse employment action in order to prevail on a disparate treatment claim under the ADEA. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78, 129 S. Ct. 2343, 2351 (2009); see also Mora v. Jackson Mem'l Found., Inc., 597 F.3d 1201, 1204 (11th Cir. 2010) (stating that in Gross the Supreme Court "ruled out the idea of a 'mixed motive' ADEA claim"). In Gross, the Supreme Court left open the question "whether the evidentiary framework of [McDonnell Douglas] . . . is appropriate in the ADEA context." Gross, 557 U.S. at 175 n.2, 129 S. Ct. at 2349 n.2.

Accordingly, in light of Gross, we apply the McDonnell Douglas framework to determine whether Ostrow presented sufficient evidence that age was the "but-for" cause of GlobeCast's decision not to renew his employment contract. We do so because Gross did not explicitly overrule use of the McDonnell Douglas framework in ADEA cases involving circumstantial evidence and the but-for causation standard of Gross is consistent with the McDonnell Douglas framework, in which the burden of persuasion remains with the plaintiff.

In addition, given that Ostrow's appeal challenges only the third step of the magistrate judge's McDonnell Douglas analysis, we assume arguendo that Ostrow established a prima facie case of age discrimination and that GlobeCast proffered a legitimate, nondiscriminatory reason, and address only whether Ostrow presented evidence from which a jury reasonably could find that GlobeCast's reason was pretext for age discrimination.

A plaintiff may show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Brooks v. Cnty. Comm'n of Jefferson Cnty., 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation marks omitted). The plaintiff must demonstrate "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

6

employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" Alvarez, 610 F.3d at 1265 (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997)). A reason cannot be "pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S. Ct. 2742, 2752 (1993) (quotation marks omitted); see also Brooks, 446 F.3d at 1163.

The plaintiff cannot "recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer," but instead must "meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman, 229 F.3d at 1030. Indeed, in deciding whether the plaintiff has shown pretext, we do not sit as a "super personnel department," and must take care not to second-guess the employer's business judgment. See id. For this reason, "[t]he inquiry into pretext centers on the employer's beliefs, not the employee's beliefs, and . . . not on reality as it exists outside of the decision maker's head." Alvarez, 610 F.3d at 1266 (explaining that the question is not whether the employee actually had performance problems, but "whether her employers were dissatisfied with her for

7

these or other non-discriminatory reasons, even if mistakenly or unfairly so, or instead merely used those complaints . . . as cover for" discrimination).

## B.    Ostrow's ADEA Claim

Ostrow did not present evidence from which a jury could conclude that GlobeCast's reason for not renewing his contract—restructuring its legal department to save costs—was pretext for age discrimination.  Ostrow did not dispute that GlobeCast was struggling financially.  GlobeCast had not been profitable for years and operated only because of shareholder support.  In recent years, GlobeCast had reduced its workforce by half and consolidated offices to reduce costs.  Yet, in 2008, GlobeCast's net income was negative $15 million.

GlobeCast's parent company, GlobeCast Worldwide, tasked new CEO Justin with returning GlobeCast to profitability.  Justin had previously worked at GlobeCast France and GlobeCast Europe and had most recently been the CEO of GlobeCast Asia.  To fulfill his mission at GlobeCast America, Justin, among other things, redistributed responsibilities among GlobeCast's employees and let ten employees go, including Ostrow.  Justin explained that he believed GlobeCast's legal department was overstaffed because other GlobeCast corporations did not have two attorneys in their legal departments.  GlobeCast also had more active litigation cases than Justin had seen at other GlobeCast corporations.  Meanwhile,

8

Ostrow was GlobeCast's second-highest paid employee.  Based on GlobeCast's poor results in litigation matters and a need to assist in business generation to improve the bottom line, Justin decided to shift the legal department's focus to transactional work by reducing staff to one in-house transactional attorney and hiring outside counsel to handle litigation.  Justin stated that he "expected [GlobeCast] to realize significant positive results on the open litigation matters and realize cost savings as a result of this decision."

Ostrow argues that GlobeCast's financial reason did not make sense because GlobeCast had been losing money since 2000 and yet had renewed his two-year contract twice before.  Ostrow's argument ignores the undisputed facts that by June 2009 GlobeCast Worldwide wanted "major changes," and tasked Justin as the new CEO with turning GlobeCast's fortunes around.

Ostrow also contends that restructuring the legal department in fact cost GlobeCast money.  This argument merely quarrels with the wisdom of Justin's restructuring decision.  The inquiry is whether Justin believed in good faith (even mistakenly) that his restructuring plan would save money, not whether it in fact did so.  See Alvarez, 610 F.3d at 1266.  Ostrow presented no evidence that casts doubt on Justin's stated good faith belief.  By restructuring the legal department, GlobeCast would go from paying Ostrow's $219,000 salary and Carroccia's

9

$155,000 salary, to paying only Carroccia's new $178,500 salary, a savings of $195,500.[5]

Ostrow points to Justin's deposition testimony admitting that he did not know how much money was spent on outside counsel after Ostrow's departure and that the amount spent was not significant to the bottom line. These statements, which are taken out of context, do not show pretext. In context, Justin testified that GlobeCast's most significant litigation cost was the Intelsat case, which had been handled by outside counsel even before Ostrow left, that the cost of outside counsel for the remaining, smaller cases, while not negligible, was not significant to the bottom line, but that the real cost of those smaller cases was the risk of being countersued. If anything, this testimony supports Justin's explanation that he wanted to shift the legal department's focus away from litigation and toward business generation.

---

[5]Although whether, in fact, Justin's restructuring plan saved GlobeCast money is not the relevant inquiry, the district court noted that the undisputed facts suggest that Justin's restructuring plan did, in fact, result in a net savings during Carroccia's first 18 months as General Counsel, as follows:

> Between January 1, 2010, and June 2011, GlobeCast expended approximately $100,000 to $125,000 on outside counsel for litigation-related services of the type that Ostrow had previously provided. Thus, the changes to the structure of GlobeCast's legal deparment resulted in a net savings to GlobeCast from January 1, 2010, through June 2011 of, at the very least, $169,250 (1½ times Ostrow's annual salary of $219,000 ($328,500), minus the total of $125,000 in outside litigation costs and 1½ times the increase in Carroccia's salary beginning January 1, 2010 ($159,250), equals $169,250).

(Citation omitted).

Ostrow also failed to show the kind of pattern of older employees being replaced by younger employees that can be circumstantial evidence of a decisionmaker's discriminatory intent. In Damon v. Fleming Supermarkets of Fla., Inc., a supermarket chain's district manager terminated or demoted four of seven store managers within a one-year period. All four store managers were over 40 and were replaced by employees who were under 40. 196 F.3d 1354, 1361 (11th Cir. 1999). This Court concluded that a "pattern of firing or demoting so many older workers and replacing them with younger workers, by the relevant decision-maker during the same time period, constitutes probative circumstantial evidence of age discrimination." Id.

Here, Ostrow has not shown that Justin engaged in such a pattern. Beginning in June 2009, Justin (who was himself 43) let go nine other GlobeCast employees (besides Ostrow), none of whom were replaced by new hires. Two of these nine employees, former Vice President of Human Resources, Cathleen Togut, and former Vice President of Engineering and Operations, David Szelag, were in their 50s. The duties of Togut were assumed by her supervisor, Anne Phillipe, GlobeCast's Chief Financial Officer, who was in her 30s. The duties of Szelag were divided between two employees, Gus Pu, in his mid-50s, and Brad Smith, in his late 40s. Mary Salih, a third employee in her late 40s, was also let

11

go, but there is no evidence as to who replaced her or assumed her duties.  Thus, the record establishes that only two employees Justin let go during his restructuring—Togut and Ostrow—had their duties assumed by someone under 40.  Moreover, the assumption of Togut and Szelag's duties by GlobeCast's remaining employees was consistent with Justin's stated desire to reduce staff to cut costs.  And, unlike in Damon, there was no evidence that Justin ever made any comments regarding age during this time frame.  Cf. id. at 1358-59 (stating that the decisionmaker wanted "aggressive, young men" to be promoted).

Ostrow points to other former GlobeCast employees who left GlobeCast between 2006 and 2008, but these employees were terminated by GlobeCast Worldwide's Chairman and CEO, Christian Pinion, not by Justin during his restructuring.  Given that Ostrow did not show evidence of one decisionmaker in one time period replacing many older workers with younger workers, we cannot say he showed the kind of a firing and hiring pattern found in Damon that is probative circumstantial evidence of age discrimination.

Based on the above, Ostrow has not shown that GlobeCast's proffered financial reason for not renewing his contract was pretext for age discrimination and has not shown that his age was the "but-for" cause of the decision not to

12

renew his contract.  For these reasons, we affirm the magistrate judge's order granting summary judgment to GlobeCast.

**AFFIRMED.**