[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
————————————

No. 13-14323
Non-Argument Calendar
————————————

D.C. Docket No. 1:12-cv-01036-WSD

LORETTA J. BOONE,

Plaintiff-Appellant,

versus

CITY OF MCDONOUGH,
a municipal corporation,
PRESTON DORSEY,

Defendants-Appellees.

————————————

Appeal from the United States District Court
for the Northern District of Georgia
————————————

(July 2, 2014)

Before MARCUS, FAY and KRAVITCH, Circuit Judges.

PER CURIAM:

Loretta J. Boone appeals from the district court's grant of summary judgment to defendants City of McDonough and McDonough Chief of Police Preston Dorsey (collectively the defendants), as to Boone's claims of discrimination and retaliation, in violation of 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964 (Title VII), and a related First Amendment claim brought under 42 U.S.C. § 1983.  For the reasons that follow, we affirm.

I.

Boone, a black female, was hired by the McDonough police department in November 2002.  In 2007, she was promoted to sergeant, a position she held until her termination in January 2011.

After Boone was promoted to sergeant, she worked under the supervision of Lieutenant Cal Callahan.  Boone and Callahan did not get along, and Callahan informed Boone that he thought she was incompetent and unqualified for the sergeant position.  In 2009, Callahan disciplined her for insubordination.

Following this disciplinary action, Boone wrote a grievance to Dorsey outlining her difficulties with Callahan and responding to the disciplinary action. Boone alleged that Callahan treated her differently than male officers and that he harassed and bullied her, creating a hostile work environment.  Dorsey turned the grievance over to human resources manager Carla Tuck, who investigated Boone's allegations.  At Tuck's request, Boone submitted a memorandum detailing

2

instances of discriminatory treatment in the department dating back to 2003.[1]
Following her investigation, Tuck concluded that Boone and Callahan could not work together, but that there was no evidence that Callahan engaged in race or gender discrimination. As a result of Tuck's investigation, Dorsey transferred Callahan to a different shift.

Although Tuck investigated Boone's complaint against Callahan, the City Administrator brought in David Archer to investigate Boone's complaint that the department as a whole suffered from racial animus. After interviewing numerous officers, Archer concluded that, although there were some instances of misconduct, there was no pattern of discrimination and that the earlier use of racially insensitive language had been addressed by the department.

In March 2009, while Archer's investigation was underway, Henry County Police Department (HCPD) Officer C.D. Goetz filed a complaint against Boone wih Dorsey. According to Goetz, while he was investigating an attack on Boone's son and questioning another boy involved, Boone stood nearby to listen. Goetz instructed Boone to return to his squad car and complete some paperwork, but she refused.

---

[1] Specifically, Boone wrote that Sergeant Elkins made several discriminatory comments to a black officer, Major Langley referred to black men as "boy," and Officer Yarian used racial slurs to another officer.

Dorsey turned the complaint over to Tuck and Archer. Although Archer concluded that Boone had engaged in the alleged misconduct, he recommended that Boone not be disciplined.

In April 2010, the HCPD again filed a complaint about Boone with Dorsey. Officer Joseph Plemons alleged that Boone berated him about the manner in which he was handling an investigation. Dorsey turned the complaint over to internal affairs, and although the investigation showed that Boone had acted improperly, she again was not disciplined.

In November 2010, HCPD filed a third complaint about Boone stemming from a traffic stop. After Boone ran a red light and was pulled over by HCPD, she got out of her car to ask HCPD Officer M. Stroud to show professional courtesy and not issue her a citation. Stroud directed Boone to get back into her car at least four times before she complied. At some point, HCPD Sergeant J. Valentine arrived to provide backup. Stroud issued the citation to Boone, at which point Stroud and Boone argued over whether her conduct constituted obstruction. Stroud and Valentine eventually told Boone she could leave. As Boone was driving off, Stroud and Valentine heard Boone call them "rednecks."[2] Valentine stopped Boone and asked her if she usually called people rednecks, to which Boone responded: "When they're rednecks! Yes! I certainly do, racist, yeah. I

_____

[2] The audio tape of the stop did not record Boone's statement. But the tape showed Valentine stop Boone, and it recorded the conversation between Boone and Valentine.

4

certainly do when they are." Valentine asked if he and Stroud were racist, and Boone responded by asking "are you?" When Valentine asked Boone for the name of her supervisor, Boone told him to "find out on your own."

Dorsey turned this third complaint over to internal affairs. Major Ken Noble investigated the complaint and concluded that Boone had directed a racial slur at Stroud and Valentine and had committed obstruction by refusing to get back into her car. Because this was the third incident in which a HCPD officer had filed a complaint against Boone for her conduct, Boone was terminated. She appealed her termination to the City Administrator, who asked Tuck to investigate Boone's allegation that her termination was retaliatory. After Tuck concluded that there was no evidence to support Boone's allegations, the City Administrator upheld the termination decision. Boone then filed a charge with the EEOC, alleging race and gender discrimination and retaliation stemming from her discharge. After she received a right-to-sue letter, Boone filed her civil complaint in the district court.

In her complaint, Boone raised three arguments that are relevant to this appeal: (1) disparate treatment on account of race and gender; (2) a retaliatory firing for filing a grievance complaining about race and gender discrimination; and (3) a violation of her First Amendment right to complain about the discriminatory conduct.[3]

---

[3] Boone also raised a claim of *ultra vires*, but withdrew the claim during her deposition.

5

The defendants moved for summary judgment on all claims. They argued that Boone failed to establish a prima facie case of discrimination because she had not shown any similarly situated comparators who were treated differently. Alternatively, they argued that Boone failed to show their legitimate non-discriminatory reasons for terminating her were a pretext for discrimination. With respect to Boone's retaliation claim, the defendants argued that Boone could not show a causal connection between her grievance and her termination two years later. They noted that any possible connection was removed by the intervening act of Boone's repeated misconduct.

In her response to the defendants' motion, Boone claimed that she satisfied the prima facie cases of discrimination and retaliation because she was treated differently from the male officers and there was a direct link between her grievance and her termination. She then asserted that the facts supported her claims of harassment and a hostile work environment because racially-charged words were repeatedly used without punishment, and the hostility to women was department-wide. She did not discuss her First Amendment claim, but instead alleged that she was seeking to hold Dorsey personally liable for the harassment and discrimination under § 1983. Boone then submitted affidavits from three former female City of McDonough police officers: (1) Erica Lewis, to whom Yarian had made racial comments; (2) Wendy Stephens, who was denied assignments and training

6

opportunities because of her gender, and who heard rumors of discriminatory treatment; and (3) Tammy Cannon, who stated that the "good-old-boy" style of working was common knowledge around the police department. The defendants objected to these affidavits as vague, conclusory, and not based on personal knowledge.

A magistrate judge recommended that summary judgment be granted in favor of the defendants. With respect to the affidavits Boone submitted, the magistrate judge explained that the allegations were generally not appropriate for consideration, but noted that he would have reached the same result even if he had considered them. Addressing the discrimination and retaliation claims, the magistrate judge found that Boone failed to show a similarly situated comparator, and there was no causal connection between Boone's grievance and her termination. The magistrate judge further found that Boone failed to rebut the defendants' legitimate nondiscriminatory reasons for terminating her – her misconduct with the HCPD. Thus, the discrimination and retaliation claims failed. The magistrate judge determined that Boone had abandoned her First Amendment claim by failing to argue it in her response to the summary judgment motion. He also concluded that, to the extent Boone raised a § 1983 equal protection claim against Dorsey in his personal capacity, the claim was the same as the Title VII

7

claim against the City of McDonough, and thus failed for the same reasons.[4]

Finally, the magistrate judge found that the complaint failed to allege harassment or hostile-work-environment claims, nor had Boone exhausted those claims because she failed to raise them in her EEOC charge, and these allegations could not reasonably be expected to grow out of her exhausted claims.

The district court adopted the magistrate judge's recommendation and granted summary judgment in favor of the defendants.[5]  This is Boone's appeal.

## II.

We review *de novo* the district court's grant of summary judgment. *Robinson v. Tyson Foods, Inc.,* 595 F.3d 1269, 1273 (11th Cir. 2010).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "We draw all factual inferences in a light most favorable to the nonmoving party."  *Shiver v. Chertoff,* 549 F.3d 1342, 1343 (11th Cir. 2008).  We may affirm a decision of the district court on any ground supported by the record. *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1088 n.21 (11th Cir. 2007).

## III.

---

[4]  The magistrate judge also found that the Title VII claims against Dorsey in his individual capacity failed.  Boone does not challenge this finding on appeal and has abandoned it. *Holland v. Gee*, 677 F.3d 1047, 1066 (11th Cir. 2012) (explaining that issues not raised in the initial brief are abandoned).

[5]  Although the district court adopted the magistrate judge's recommendation, it issued an order addressing Boone's objections to the recommendation.

8

On appeal, Boone raises three issues: First, she argues that she sufficiently exhausted her equal protection[6] claims in her EEOC complaint by stating that she had previously made internal complaints about race and gender discrimination. Second, Boone argues that the district court improperly determined that Dorsey was not liable for discrimination under § 1983 because he personally participated in the alleged constitutional violations. Finally, Boone argues that the district court erroneously granted summary judgment as to her claims of disparate treatment and retaliation. She further contends that the district court improperly excluded the affidavits of Lewis, Stephens, and Cannon from consideration. We address each issue in turn.

### A. Exhaustion

Boone argues that she sufficiently exhausted her equal protection claims, and the lack of specificity in the EEOC charge was an error accountable to the EEOC. Boone also states that she has not abandoned her First Amendment claim, and she references a first amended complaint.[7]

In her EEOC charge, Boone explained, "I had previously complained internally about sex and race discrimination." In her intake questionnaire, Boone wrote that the discriminatory act of which she complained was her termination, and

---

[6]  The reference to equal protection on appeal seems to arise in response to the magistrate judge's report in which he considered one of Boone's claims to raise equal protection issues. It does not appear that Boone raised an equal protection claim in her complaint.

[7]  There is no first amended complaint in the record.

she mentioned her grievance of "gender discrimination + hostile work environment, which lead the city to launch an investigation into allegations of improper managem't of P.D. by the chief."

The district court found this language insufficient to exhaust Boone's hostile-work-environment claims. We need not reach this issue because, even if we were to conclude that Boone exhausted her claims of harassment and hostile work environment, she failed to raise either of them in her original complaint. In order to successfully raise a claim for harassment or a hostile work environment, a plaintiff must attempt to state such a claim in her original complaint. *Maniccia v. Brown*, 171 F.3d 1364, 1367 n.1 (11th Cir. 1999). This rule is applicable even where the plaintiff alleged such a claim in her administrative complaint and EEOC charge. *Id.*

Boone also failed to amend her complaint before, or even after, the defendants filed their motion for summary judgment. It is well-settled that a plaintiff may not amend her complaint through argument in a brief opposing summary judgment. *Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013). Instead, at the summary judgment stage, a plaintiff seeking to assert a new claim must amend her complaint pursuant to Federal Rule of Civil Procedure 15(a). *Id.* A court is barred from amending a plaintiff's complaint *sua sponte* because the court may not create the impression that it has

10

become the plaintiff's advocate. *Id.* Therefore, because Boone raised these claims for the first time in her response to the defendants' summary judgment motion, these claims were not properly before the district court. *Id.*

Additionally, Boone did not argue her First Amendment claim at the summary judgment stage, and therefore she abandoned it. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (explaining that a plaintiff cannot rely on her pleadings to avoid summary judgment and grounds alleged in the complaint, but not relied upon at the summary judgment stage, are deemed abandoned). Although Boone alleges that she raised a First Amendment claim in an amended complaint, the record does not support her assertion. In any event, Boone cannot rely upon her pleadings to avoid judgment against her. *Id.* Accordingly, we affirm the grant of summary judgment with respect to the harassment, hostile-work-environment, and First Amendment claims.

B. Section 1983

In her response to the summary judgment motion, Boone argued that Dorsey was liable for the discrimination because he knew of and condoned racial discrimination. Because she raised this issue for the first time in her response to the summary judgment motion, and she did not amend her complaint, this issue was not properly before the court, and summary judgment was proper. *Miccosukee Tribe of Indians of Fla.*, 716 F.3d at 559.

11

To the extent that Boone now argues that the defendants violated her First Amendment right when she referred to the HCPD officers as "rednecks,"[8] she raises this argument for the first time on appeal.  Thus, we do not consider it. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

### C.  Discrimination and Retaliation

Boone asserts that the evidence shows that she was treated differently with respect to her benefits, her duties as a supervisor, and the discipline she received as a black female.  She alleges that white male officers who used racial slurs or acted inappropriately while off duty were not punished as severely as she was.

Under Title VII, when direct evidence of discrimination is not available, a plaintiff may present circumstantial evidence of discrimination sufficient to create a jury question.  *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002).  Where a party seeks to establish discrimination through circumstantial evidence, we evaluate the claim under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Analysis of a disparate treatment claim under § 1983 is identical to the analysis under Title VII where the facts on which the claims rely are the same.  *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

---

[8]   It is not clear whether Boone intended to argue that her termination on this basis violated her right to free speech or her right to complain of discrimination.  She appears to use the arguments interchangeably.

To establish a prima facie case of disparate treatment, the plaintiff must show: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees more favorably; and (4) she was qualified to do the job. *Maniccia*, 171 F.3d at 1368. To establish a prima facie case of discriminatory retaliation, the plaintiff must show: (1) she participated in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between her participating in the protected activity and the adverse employment action. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).

Once the plaintiff makes the requisite showing of a prima facie case, and the employer articulates a legitimate, nondiscriminatory reason for its actions, the plaintiff must offer evidence that the employer's alleged reason is a pretext for discrimination. *McDonnell Douglas Corp*, 411 U.S. at 802-04. To show pretext, the plaintiff must show that: (1) the offered reason was false; and (2) the decision was motivated by some illegal purpose. *Springer v. Convergys Customer Mgmt. Grp. Inc*., 509 F.3d 1344, 1349 (11th Cir. 2007) (quotation omitted). A plaintiff may not "recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet

13

that reason head on and rebut it. . . ."  *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*).

Additionally, "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).  A plaintiff may also defeat a summary judgment motion by presenting "a convincing mosaic of circumstantial evidence" that "raises a reasonable inference that the employer discriminated against her."  *Id.*

Even assuming that Boone established prima facie cases of discrimination and retaliation, the defendants have offered a legitimate, nondiscriminatory reason for firing Boone.  Boone has not shown, or even argued, that this reason was pretextual.  The defendants indicated that Boone was terminated for her misconduct with HCPD officers.  Because this proffered reason is "one that might motivate a reasonable employer," the defendants prevail under the *McDonnell Douglas* framework.  *See Chapman*, 229 F.3d at 1030.  Additionally, although Boone presented evidence to show instances of misconduct in the police department, the circumstantial evidence is not strong enough to raise a reasonable inference that the City of McDonough actually discriminated against her, particularly in light of the intervening incidents with the HCPD.

14

As to Boone's complaint that the district court erred in failing to consider the affidavits she submitted, the record shows that the district court did consider them. Even if the factual assertions in the affidavit were accepted as true, they would not have affected the outcome of this case. Accordingly, we affirm the district court's grant of summary judgment.

**AFFIRMED.**